### WILLIAM CHURCHILL, JUNIOR, v. JOSEPH B. MARSH and another.

The acts of 1852 and 1853, extending the jurisdiction of the Marine Court so as to permit a recovery to the amount of $500, also extended the power of that court to issue an attachment against the property of a non-resident, when the amount claimed does not exceed that sum.

An attachment issued out of the Marine Court against property, must be issued under the seal of the court.   *Per* WOODRUFF, J., DALY, J., *concurring;* INGRAHAM, FIRST J., *dissenting.*

If not so sealed, and the defendant does not appear in the action, although he comes into court to object to the process; the court do not, in virtue of the attachment, or the summons founded thereon and not personally served, acquire any jurisdiction of the defendant, and a judgment by default will be reversed.

The Marine Court may permit an amendment in a constable's return of the service of an attachment and inventory.

Churchill *v.* Marsh.

Such a return, stating the attachment of property at a certain place, and service of a copy of the writ and inventory on a person found in possession of the property, and that such service was not made on the defendant, is sufficient.

An affirmative act, of the same import as a repealed statute, is *per se* a repeal of the repealing act.

By a repeal of a repealing statute, the original statute is, to the extent of such repeal, revived, especially where the repealing statute operated only constructively—as a repeal, not by its terms but by implication.

THIS action was commenced by an attachment issued without a seal, from the Marine Court, upon the ground of non-residence on the part of the defendants. The claim was a money demand for $237 56, due upon a promissory note. The return from the court below set forth the affidavit and bond whereon the attachment was issued, with a copy of the writ, and the constable's return stating the taking of certain property, and adding the matter given in substance in one of the above head notes.

When the writ was returned, the defendants appeared by counsel and objected to the jurisdiction of the court, for the reasons discussed in the opinion. The defendants' counsel then withdrew, without pleading to the merits. A short summons was issued, and afterwards served " by copy." On the return of the summons, the plaintiff alone attended, and took a judgment by default, which now came up for review.

*John I. Tyler* and *Elias G. Brown*, for the defendants.

*Daniel P. Barnard* and *Geo. W. Parsons*, for the plaintiff.

WOODRUFF, J.—I am much inclined to the opinion, that section 9 of the act of April 17, 1852, ch. 389, and section 2 of the act of July 21, 1853, ch. 617, by which it is provided, that in all cases, where the jurisdiction of the Marine Court is now limited, " so that there can be no recovery therein for a larger amount than $100," (act of 1852,) " the jurisdiction is hereby extended, so that in such cases *the recovery* of either

Churchill *v.* Marsh.

party may hereafter be to the amount of $500," operated to enlarge the jurisdiction of that court in issuing attachments against non-resident debtors as well as other process.

Before the Code was enacted that court had, under the provisions of section 33 of the non-imprisonment act, (Laws of 1831, p. 396, ch. 300, as amended by ch. 377 of Laws of 1840,) power to issue an attachment against non-resident defendants, without any limitation in terms as to the amount of the claim. The limitation consisted in the want of jurisdiction, where the sum due or thing demanded exceeded $100. Section 53 of the Code confers civil jurisdiction on that court (see, also, § 65) in various actions specified and no other, viz., an action arising on contract for the recovery of money only, "if the sum claimed do not exceed one hundred dollars;" an action for damages, &c., * * * "if the damages claimed do not exceed one hundred dollars;" an action for a penalty, "not exceeding one hundred dollars;" an action commenced by attachment of property, as now provided by statute, "if the debt or damages claimed do not exceed $100;" and so on in various other actions, if the sum, debt, amount or damages claimed " does not exceed $100."

It is now argued, that the acts of 1852 and 1853, which remove the limitation of the amount which may be recovered to $100, and extend the jurisdiction, " so that there may be a recovery to the amount of $500," does not extend the power to issue an attachment to cases where the amount claimed exceeds $100.

If this be so, then it does not give jurisdiction of an action arising on contract, where the amount claimed exceeds $100; nor of any of the actions mentioned in § 53, in which the jurisdiction is limited by the amount of debt or damages claimed, for this limitation is in the same words applied to each action of which jurisdiction is conferred.

The suggestion amounts to this: " Although the jurisdiction is extended so that there may be a recovery to the amount of $500, yet there is no jurisdiction if the amount claimed exceeds $100." I need hardly say that this would

be an insensible and contradictory construction, that we should not adopt, unless compelled to do so. The better reading of the laws of 1852 and 1853 is, that all restrictions now existing are removed, so that there may be a recovery to the amount of $500, in all cases of which, heretofore, the court had jurisdiction to the amount of $100. And this being the true meaning of these acts, it follows that so far as the limitations in section 53, to actions where the amount claimed did not exceed $100, impeded or prevented a recovery of a larger sum, they are abrogated. And the result is, that the jurisdiction embracing a right of recovery to the extent of $500, carries with it a right in the plaintiff to claim a recovery to that extent. And the power of the court to issue an attachment against a non-resident, under § 33 of the act of 1830, having no limitation in terms, and none by implication, except the limit to the court's jurisdiction, the attachment in this case was legally issued.

As to the alleged defect in the constable's return, I think it is groundless. He did return upon whom he did serve the attachment and inventory, so that it appeared by the return that he did not serve it on the defendants. This was sufficient without the amendment; and if an amendment was necessary, I think the court might permit it to be made.

The remaining question is, whether the court acquired any jurisdiction by the issuing and service of an attachment not having a seal; or whether it is now necessary that process out of the Marine Court shall be sealed with the seal of that court.

By section 107 of the act of 1813, (2 Rev. L. 382,) it is provided that the Marine Court " shall have a seal, to be devised by the justices thereof." By section 111 of the same act, it is enacted, among various other things, that " all process to be issued out the said court shall be  *  *  *  sealed with the seal of the said court."

In 1849 it was enacted that the above section (107) of the act of 1813 be, and the same was thereby repealed. (Sess. Laws of 1849, p. 200, § 7.) Although this last act did not in

terms repeal § 111 of the act of 1813, it did, by § 16, provide that all acts, and parts of acts, inconsistent with the act of 1849, were repealed. The result was, that so much of § 111 of the act of 1813 as required that process should be sealed, was repealed, because, and only because the court having, thereafter, no seal, compliance with that requirement was impossible. But, by act of 1852, (Sess. Laws of 1852, p. 649, § 10,) the Common Council of New York are required to provide a seal * * "which shall be the seal of the said court." This provision being affirmative in its character, not only repealed the repealing act of 1849, so far as that act had deprived the Marine Court of a seal, but to that extent revived the 107th section of the act of 1813. It is no longer, therefore, impossible to comply with the requirements of § 111, and that section, being before only repealed by necessary construction, is, in my opinion, revived by the restoration of a seal to the court. The case might, perhaps, have been otherwise, if § 111 had been in terms repealed by the legislature; but such repeal was only by inference from the fact that the seal was taken away, and on its restoration the reason fails and the provision revives. An affirmative act of the same import as a repealed statute is *per se* a repeal of the repealing act; (1 Bl. Com. 89; 4. Bac. 647–8;) that is, if a statute which has been repealed be afterwards revived, the repealing statute becomes of no force. And by a repeal of a repealing statute, the original statute is, to the extent of such repeal, revived; (*Wheeler* v. *Roberts,* 7 Cow. 536; 1 Bl. Com. 90; 4 Bac. 638, Stat. D.; 2 Inst. 686; 1 Coke, 7;) and this is, I apprehend, clearly true where the repealing statute only operated constructively, as the act of 1849 did upon § 111 above mentioned. I think, therefore, that the attachment in this case should have been issued under the seal of the court.

This is a substantive and not a merely technical objection. It impeaches the very act by which jurisdiction is to be acquired over the defendants, and rests on the non-compliance with a statute requisite. Had the defendants appeared and pleaded to the merits, the objection would have been

waived; but having come in, only to object to the jurisdiction upon this and other grounds alleged as errors or irregularities in the process, they waived nothing.

It is not enough to say that the process was not void, but only voidable, as was said of a venire and an execution wanting a seal. (*Jackson* v. *Brown*, 4 Cow. 550; *The People* v. *Dunning*, 1 Wend. 16.) There, the court had acquired jurisdiction of the parties and of the subject of the action, and such defects were, in those cases, deemed by the Supreme Court amendable. Here, a court of limited jurisdiction must pursue the very means of acquiring jurisdiction prescribed by the statute. And besides, the objection was taken, and well taken, and the court could not utterly disregard it.

I think we are constrained to reverse the judgment.

DALY, J., *concurred.*

INGRAHAM, FIRST J., *dissenting.*—I concur in the opinion of Judge WOODRUFF, except as to the necessity of a seal to the attachment when issued by the Marine Court.

Section 107 of the act of 1813 confers upon the court the right to have a seal for the court.

Section 7 of the act in relation to the Marine Court, page 199, repeals the 107th section, above referred to, and thereafter the court had no seal; and the same section conferred upon the parties chosen by that act all the powers theretofore possessed by the justices of that court.

The 16th section of the same act repealed, also, provisions of law inconsistent with the provisions of the said act.

So much, therefore, of the act of 1813 as required attachments from the Marine Court to be under seal, was repealed by that act as being inconsistent with the provision taking away the seal of the court.

The act of 1852, (Sess. Laws, p. 647,) which restored to the court a seal, did not revive the old provision of the act of 1813, which required attachments to be under seal. That provision, having been repealed by act of 1847, could not be

revived except by legislative enactment or the repeal of the act of 1847—neither of which has taken place. I think the judgment should be affirmed.

Judgment reversed.